**Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**LOCAL LODGE 197, INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, AFL–CIO, Defendant.**

**No. 96–CV–978.**

United States District Court, N.D. New York.

Aug. 8, 1997.

Patricia M. Rodenhausen, Regional Solicitor, U.S. Department of Labor, New York City (Harold W. LeMar, of counsel), for plaintiff.

Pozefsky, Bramley & Murphy, Albany, NY (Bruce C. Bramley, of counsel), Blake & Uhlig, P.A., Kansas City, KS (Charles R. Schwartz, of counsel), for defendant.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

### A. Procedural History

The Secretary of Labor initiated this action pursuant to Title IV of the Labor–Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. §§ 401, *et seq.* ("Act") against defendant Local Lodge 197, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO ("Lodge 197"). The Secretary contends that Lodge 197 violated section 401(e) of the Act when it denied a member in good standing the reasonable opportunity to be a candidate for union office. Pursuant to Fed.R.Civ.P. 56, the Secretary now moves for summary judgment to have the election declared void and to have a new election ordered under the Secretary's supervision. Lodge 197 opposes the Secretary's summary judgment motion and has cross-moved for summary judgment in its favor. The below discussion considers both motions as the parties agree that no genuine issue of material fact exists.

## B. Facts

Lodge 197 is an affiliate local lodge of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO. As such, Lodge 197 is subject to, and governed by, the provisions of the Constitution of the International Union, and of the By-laws of Lodge 197.

The International Constitution generally provides that members "[s]hall have attended regular meetings of the Lodge to establish eligibility." Article 37.4.1.4. The By-laws of Lodge 197 further address nomination eligibility in two pertinent sections. First, section 5.2 sets forth the general rules for office eligibility, and provides:

> In addition to all other requirements, to be eligible for nomination and election to office in this Lodge, a member must have attended at least one meeting in each of the five calendar quarters immediately preceding his illness, Union duties, regular employment under a contract between the Union and his employer, or some other unavoidable situation.

Second, section 5.3 sets forth an excuse provision to section 5.2, which states:

> A member who has not attended at least one meeting in a calendar quarter for any of the reasons given in 5.2 shall present to the President within twenty (20) days after the end of the quarter his written reason for nonattendance at each of the meetings he missed. If his reason(s) is (are) acceptable to the President his name shall be entered in the book for each such meeting with a notation that his absence has been excused, and the President shall report his action at the next regular meeting and be so recorded in the meeting minutes.

On March 14, 1996, Lodge 197 held a nominations meeting for the election of Lodge officers. Charles McNally, a member in good standing, attended that meeting with the intention of seeking a nomination. During the course of the meeting, Local 197 Recording Secretary David Tarrity advised Mr. McNally that he was ineligible for office because he had failed to attend any of the three meetings during the fourth quarter of 1995 as required by Lodge 197 By-law section 5.2. Although Mr. McNally had been excused from one of the fourth quarter meetings, he had not requested to be excused from either of the other two fourth quarter meetings in accordance with section 5.3.

On March 15, 1996, Mr. McNally wrote a letter to the President of Boilermakers' International requesting his name be included on the nomination list. On March 22, 1996, Joseph A. Stinger, Assistant to the President of the International, denied Mr. McNally's request to run for office.

On April 22, 1996, Mr. McNally filed a complaint with the Secretary of Labor. Thereafter, the Secretary commenced the present action.

## II. DISCUSSION

### A. Standard For A Motion For Summary Judgment

The standard for granting a motion for summary judgment is well-settled. Summary judgment is appropriate when no genuine issues of material fact exist, and thus the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant bears the initial burden of showing the Court that, on the evidence before it, there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). There must be more than a "metaphysical doubt as to the material facts." *Delaware & Hudson Rwy., Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "In considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'" *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 516 (2d Cir.1994) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 2721 at 40 (2d ed.1983)). However, the Court must resolve all ambiguities and draw all reasonable infer-

ences in favor of the nonmoving party. *Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 2552–53; *Azrielli*, 21 F.3d at 517. Any assessments of credibility and all choices between available inferences are matters to be left for a jury, not matters to be decided by the Court on summary judgment. *Id.* see, *e.g.*, Fed.R.Civ.P. 56(e) 1963 Advisory Committee Note; *Agosto v. INS*, 436 U.S. 748, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978); *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472–73, 82 S.Ct. 486, 490–91, 7 L.Ed.2d 458 (1962); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989); 6 Moore's Federal Practice P 56.02 at 56–45 (2d ed.1993). "Only when reasonable minds could not differ as to the import of the evidence is summary judgement proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

It is with the foregoing standards in mind that the Court turns to the issues presented.

### B. The Exhaustion Requirement

■ Section 482(a) of Title 29 requires that a union member exhaust available internal remedies before filing a complaint with the Secretary. In determining whether a member has met this requirement, "union members may use broad or imprecise language in framing their internal union protests...." *Hodgson v. Local Union 6799, United Steelworkers of Am., AFL–CIO*, 403 U.S. 333, 340, 91 S.Ct. 1841, 1846, 29 L.Ed.2d 510 (1971). The rule was intended to balance the "revealed abuses in union elections without departing needlessly from its long-standing policy against unnecessary governmental intrusion into internal union affairs." *Wirtz v. Local 153, Glass Bottle Blowers Assn.*, 389 U.S. 463, 470–71, 88 S.Ct. 643, 648, 19 L.Ed.2d 705 (1968).

The threshold issue is whether Mr. McNally has satisfied the exhaustion requirement. Defendant contends that Mr. McNally has failed to comply with internal appeal procedures in accordance with the International Constitution. Specifically, defendant maintains that because Mr. McNally was not nom-

inated for union office, his March 15, 1996 letter to the International Union President was not a proper appeal.

Defendant's argument is misplaced. As defendant knows, the reason Mr. McNally was not nominated at the March 14, 1996 meeting was because Recording Secretary David Tarrity intentionally omitted his name from the list of candidates eligible for nomination. Regardless of whatever label is placed on Mr. McNally's letter to the President, it is apparent that he attempted to redress his ineligibility for union office internally. *See Hodgson*, 403 U.S. at 340, 91 S.Ct. at 1846 (espousing principle that exhaustion rule "must reflect the needs of rank and file union members"); *Donovan v. CSEA Local Union 1000, American Federation State, County and Municipal Employees, AFL–CIO*, 761 F.2d 870, 874 (2d Cir.1985) (stating that "a heavy burden is imposed on the union to demonstrate that it did not have adequate notice of the protest, keeping in mind that 'members should not be held to procedural niceties' ") (quoting *Local 3489, United Steelworkers of Am., AFL–CIO v. Usery*, 429 U.S. 305, 311 n. 6, 97 S.Ct. 611, 615 n. 6, 50 L.Ed.2d 502 (1977) ("*Steelworkers* ")).

Lodge 197 admits that Mr. McNally attended the nomination meeting and registered pre-election protests to Mr. Tarrity's refusal to include his name for nomination eligibility. Lodge 197 also concedes that Mr. McNally wrote to the International Union President seeking to have this decision overruled. Lodge 197 denied that request. Mr. McNally's internal options were, at that point, foreclosed. Consequently, the Court finds that Mr. McNally has satisfied the exhaustion requirement contained in section 402(a) of the Act.[1]

### C. 29 U.S.C. § 481(b)

#### i. Introduction

Section 401(e) of the Act, 29 U.S.C. § 481(e), provides in relevant part:

In any election required by this section a reasonable opportunity shall be given for the nomination of candidates and every

---

1. In any event, Defendant has admitted that jurisdiction is conferred upon the Court by section 402(b) of the Act, 42 U.S.C. § 482(b) (Defendant's Answer, ¶ II).

member in good standing shall be eligible to be a candidate and to hold office (subject ... to reasonable qualifications uniformly imposed).

Section 402(c) of the Act, 29 U.S.C. § 482(c), further provides that a court may declare an election void and direct a new election be held under the supervision of the Secretary if a section 401(e) violation has occurred that "may have affected the outcome of the election."

In the instant case, the Secretary asserts that the attendance rule contained in section 5.2 of the By-laws of Lodge 197 violates section 401(e) by imposing an unreasonable qualification requirement for union office. The Secretary further charges that this violation may have affected the outcome of the case. Lodge 197, in contrast, contends that section 5.2 does not offend the statutory mandate of reasonableness. Specifically, Lodge 197 maintains that the attendance requirement is reasonable on its face, and especially so when read together with the excuse provision contained in section 5.3 of the By-laws. Lodge 197 further emphasizes that the attendance requirement helps to insure that candidates have a demonstrated interest in and familiarity with the affairs of the organization.

### ii. Reasonable Qualifications

■ The Supreme Court has measured the reasonableness of qualification rules "in terms of its consistency with the Act's command to unions to conduct 'free and democratic' union elections."[2] *Wirtz v. Hotel, Motel and Club Employees Union Local 6*, 391 U.S. 492, 499, 88 S.Ct. 1743, 1748, 20 L.Ed.2d 763 (1968); *see also Steelworkers*, 429 U.S. at 309, 97 S.Ct. at 614 (same). "Congress plainly did not intend that the authorization ... of 'reasonable qualifications' ... 'should be giv-

en broad reach.' " *Steelworkers*, 429 U.S. at 309, 97 S.Ct. at 614. The legislative history reveals that the Act was enacted "to guarantee 'free and democratic' union elections modeled on 'political elections in this country' where 'the assumption is that voters will exercise common sense and judgment in casting their ballots.' " *Id.* (quoting *Wirtz*, 391 U.S. at 504, 88 S.Ct. at 1750). Stated differently, the Act seeks to "protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership." *Wirtz*, 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 391 L.S. at 497. "[A]ny method of selecting candidates which unduly interferes with members' free choice is unreasonable." *Donovan*, 761 F.2d at 875.

The Supreme Court held in *Steelworkers* that a meeting attendance rule (requiring members to attend at least one-half of the Union meetings for three years prior to the union election) that resulted in the disqualification of 96.5% of the membership was unreasonable within the meaning of section 401(e), 29 U.S.C. § 481(e). In applying the considerations set forth above, the Court stressed "the antidemocratic effects" of attendance requirements as balanced against the union's interest in seeing that rule applied. *Steelworkers*, 429 U.S. at 310, 97 S.Ct. at 615. The Court further noted "that to require that a member decide upon a potential candidacy at least 18 months in advance of an election when no issues exist to prompt that decision may not foster but discourage candidacies and to that extent impair the general membership's freedom to oust incumbents in favor of new leadership." *Id.* at 311, 97 S.Ct. at 615.

---

**2.** The Court explicitly recognized the fact-intensive nature of this analysis. *Steelworkers*, 429 U.S. at 313, 97 S.Ct. at 616–17. Indeed, the Court cited to a regulation enacted by the Secretary as support for the adoption of such a flexible approach. *Id.* That regulation provides, in pertinent part:

> Experience has demonstrated that it is not feasible to establish arbitrary guidelines for judging the reasonableness of such a qualification. Its reasonableness must be gauged in the light of all the circumstances of the particular case, including not only the frequency of meetings, the number of meetings which must be attended and the period of time over which the requirement extends, but also such factors as the nature, availability and extent of excuse provisions, whether all or most members have the opportunity to attend meetings, and the impact of the rule, i.e., the number or percentage of members who would be rendered ineligible by its application.

29 C.F.R. § 452.38(a).

Following the lead of the Supreme Court, courts in other jurisdictions have found similar attendance rules to be unreasonable. For instance, the Fifth Circuit found an attendance rule requiring a member to attend at least one regular meeting in each of the twelve months prior to the election to be unreasonable, despite a liberal excuse provision in which a member could excuse their absence by simply notifying the union office in advance of the scheduled meeting. *Marshall v. Local 1402, Int'l Longshoremen's Assn. of Tampa, Florida and Vicinity AFL–CIO,* 617 F.2d 96 97 (5th Cir.), *cert denied,* 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980). The application of the attendance rule at issue in *Marshall* rendered 93.7% of the members ineligible to run for union office. *Id.; see also Reich v. International Assn. of Machinists & Aerospace Workers, Local 75 1–A,* 148 L.R.R.M. 2806, 1995 WL 266353 (W.D.Wash.1995) (invalidating attendance rule of. six meetings in year prior to election resulting in disqualification of 97% of membership); *Brock v. Local 130–A, Aluminum, Brick and Glass Workers Int'l Union,* 124 L.R.R.M. 2869, 1986 WL 15637 (W.D.Ky. 1986) (invalidating rule of one meeting in each quarter of prior year resulting in disqualification of 95.7% of membership); *Donovan v. Local 119, Int'l Union of Elec., Radio & Mach. Workers,* 548 F.Supp. 997, 998 (invalidating attendance rule requiring one-third of meetings over two years rendering ineligible 94.3% of membership), *aff'd as modified,* 548 F.Supp. 1004 (E.D.Pa.1982); *Marshall v. Millwrights Local 1914,* 107 L.R.R.M. 2938, 1981 WL 27201 (D.Ariz.1981) (invalidating attendance rule of six of the monthly meetings in prior year resulting in disqualification of 87% of membership); *Marshall v. N.Y. Area Postal Union,* 105 L.R.R.M. 2419, 1980 WL 102271 (S.D.N.Y. 1980) (invalidating attendance rule of four meetings in each of two years resulting in disqualification of 99% of membership). The Secretary was even found to have acted arbitrarily and· capriciously by refusing to bring suit against a union rule (one half of the regular monthly meetings in prior year) disqualifying 97% of the membership from running for union office. *Doyle v. Brock,* 821 F.2d 778, 780 (D.C.Cir.1987).

■ In the instance case, 87% of the union's membership was ineligible to run for union office as a result of the attendance rule.[3] This high disqualification rate should have been anticipated by Lodge 197 given that their membership encompasses 19 counties, and that members oftentimes are required to work at night in locations throughout the country. Additionally, the rule requires members to decide 15 months in advance of an election that they want to run for office. As noted in *Steelworkers,* opposition movements generally do not begin until shortly before the election is to be held, and thus to require a decision be made 15 months in advance of an election will disqualify otherwise eligible candidates from union office. *Steelworkers,* 429 U.S. at 310–11, 97 S.Ct. at 615.

Lodge 197 offers several reasons in support of its argument that their attendance rule is reasonable. First, Lodge 197 asserts that the attendance rule is not unduly rigid, because a party may obtain an excused absence from any missed meetings. Lodge 197 relies heavily on the fact that it has never denied any member a request to be excused from a monthly meeting.

This argument, however, fails to address the actual antidemocratic effect of the attendance rule. Notwithstanding the fact that absences are freely excused, it remains that 87% of the members actually were ineligible to run for union office. "We must judge the eligibility rule not by the burden it imposes on the individual candidate, but by its effect on free and democratic processes on union government." *Steelworkers,* 429 U.S. at 310–11 n. 6, 97 S.Ct. at 615 n.6. Although a per se "effects" test has never been expressly adopted, it has served as a significant factor in determining the reasonableness of attendance rules. *Id.,* 429 U.S. at 315, 97 S.Ct. at 617 (Powell J., dissenting); *see, e.g., Doyle,* 821 F.2d at 785 (same).

Second, Lodge 197 contends that the attendance rule promotes a legitimate interest Lodge 197 has in identifying and insuring

---

**3.** The ineligible percentage increases to 91% if incumbents are excluded from the equation.

candidates have a demonstrated interest in and familiarity with the affairs of the organization. Lodge 197 also asserts that the rule prepares elected members for the attendance requirement that such member must observe if elected. Although these are valid interests, they are not so strong as to overcome the antidemocratic effects the attendance rule imparts. *See, e.g., Steelworkers,* 429 U.S. at 312, 97 S.Ct. at 616.[4] Further, there is a preference to leave questions of fitness for elected office "to the membership in open democratic elections, unfettered by arbitrary exclusions.... [B]y excluding the bulk of the membership from eligibility for office, and thus limiting the possibility of dissident candidacies, runs directly counter to the basic premise of the [Act]." *Id.* The validity of the attendance rule is further drawn into doubt where, as here, a member is prevented from running for office even though he was in good standing, sought nomination in good faith and had attended prior meetings in anticipation of a union election.

The Court thus finds that the *Steelworker* rationale extends to the present case to invalidate Lodge 197's attendance rule as an unreasonable qualification in violation of section 401(e) of the Act.

### iii. May have Affected Outcome

A court may declare an election void and direct a new election be held under the supervision of the Secretary if a section 401(e) violation has occurred that "may have affected the outcome of the election." 29 U.S.C. § 482(c). A proven violation of section 481 establishes a prima facie case that the outcome of the election might have been affected and that the only way a defendant union may overcome such a prima facie case is to prove by a preponderance of the evidence that the violation did not affect the outcome of the election. *Wirtz,* 391 U.S. at 506–07, 88 S.Ct. at 1751–52; *see, e.g., Usery v. International Org. of Masters, Mates and Pilots, Int'l Maritime Div., ILA, AFL–CIO,* 422 F.Supp. 1221, 1226 (S.D.N.Y.1976), *aff'd as*

*modified,* 538 F.2d 946 (2d Cir.1976) ("*International Maritime*").

In *Wirtz,* the Supreme Court stated that "since 93% of the membership was ineligible under the invalid bylaw it is impossible to know that the election would not have attracted many more candidates but for the bylaw." *Wirtz,* 391 U.S. at 508, 88 S.Ct. at 1752; *see also Reich v. International Assn. of Machinists & Aerospace Workers Local 751–A,* 148 L.R.R.M. 2806 (W.D.Wash.1995) (holding that ineligibility of member due to attendance requirement "may have affected the outcome of the election"); *Marshall v. Millwrights Local Union No.1914, Brotherhood of Carpenters and Joiners of Am.,* 107 L.R.R.M. 2938 (D.Ariz.1985) (same). Indeed, "[t]he burden is so great as to be insurmountable in some cases." *International Maritime,* 422 F.Supp. at 1226–27.

■ In the instant case, it is undisputed that Mr. McNally attended the March 14, 1996 nomination meeting. At that meeting, Mr. McNally requested his name be placed on the nomination list. Recording Secretary David Tarrity refused to include Mr. McNally's name on that nomination list, and advised him that he was ineligible to run for Lodge 197 office. Consequently, Mr. McNally was unable to seek union office as planned.

Applying the principles of *Wirtz* to these facts, it is apparent that the inclusion of Mr. McNally's name on the nomination list "may have affected the outcome of the election." The Court further notes the absence of any argument to the contrary by Lodge 197.[5] The Court thus finds that the section 481(e) violation "may have affected the outcome of the election."

### III. Conclusion

For the foregoing reasons, the Court hereby GRANTS the plaintiff's motion for summary judgment in all respects, and further

---

4. In a footnote, defendant attempts to distinguish this case from *Steelworkers.* Defendant states that this case is different because of Lodge 197's liberal excuse provision. However, the impact of a liberal excuse provision is diminished where an attendance rule nonetheless disqualifies a signifi-

cant portion of membership from union office. *See Steelworkers,* 429 U.S. at 310, 97 S.Ct. at 615.

5. Lodge 197's Answer is the only place where defendant has denied this charge.

DENIES the defendant's motion for summary judgment in all respects.

It is so ordered.