Alexis M. HERMAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

LOCAL UNION, 1011, UNITED STEEL-WORKERS OF AMERICA, AFL—CIO, CLC, Defendant.

No. 2:97–CV–409–RL.

United States District Court, N.D. Indiana, Hammond Division.

July 21, 1999.

Carol A. Davilo, U.S. Atty's Office, Dyer, IN, Leonard A. Grossman, U.S. Dept. of Labor, Office of Solicitor, Chicago, IL, for Plaintiff.

David L. Gore, Chicago, IL, Jeffrey R. Freund, Leon Dayan, Bredhoff and Kaiser, Washington, DC, for Defendant.

### ORDER

LOZANO, District Judge.

This matter is before the court on (1) the Motion for Summary Judgment filed by Plaintiff, Alexis M. Herman, Secretary of Labor, United States Department of Labor, on December 7, 1998, and (2) the Motion for Summary Judgment filed by Defendant, Local Union 1011, United Steelworkers of America, ALF—CIO, CLC, on January 5, 1999. For the reasons set forth below, the Plaintiff's motion is **GRANTED,** the Defendant's motion is **DENIED,** the Court **DECLARES VOID** the Local 1011 election, and the Court **ORDERS** a new election under the direction of the Secretary.

Furthermore, it is **ORDERED** that the parties shall have ten days from the date of this order to report whether further judicial proceedings are necessary in this case. If no party reports that further

judicial proceedings are necessary, the Court will enter final judgment consistent with the present ruling.

BACKGROUND

The parties agree to the following facts:

Local 1011 is a labor organization within the jurisdiction of this Court and subject to the provisions of the LMRDA. Statement of Undisputed Facts ¶¶ 1–2. Local 1011 is chartered by and subordinate to the United Steelworkers of America, AFL–CIO, CLC (hereinafter, the "USWA"). *Id.* at ¶ 3. On April 17, 1997, Local 1011, pursuant to the USWA Constitution, concluded the process of conducting its regular triennial election of union officers. In the month preceding the election, Local 1011 accepted nominations of candidates for the election and determined which nominees would be eligible to appear on the ballot. *Id.* at ¶ 4.

Article VII, § 10, of the USWA Constitution provides an attendance requirement for eligibility as follows:

In order to be eligible for election as a Local Union Officer or Grievance Committee Member in any regular election or election to fill a vacancy, a member shall have attended at least one-third (⅓) of the regular meetings held by the member's Local Union during the twenty-four (24) month period immediately preceding the month in which the election is to be held.

Meetings which a member was prevented from attending because of such member's Union activities, working hours, service in the armed forces of the United States or Canada, sickness which confines, death in the immediate family, or jury duty, shall not be counted as meetings held in determining such member's eligibility under this Section 10. . . .

*Id.* at ¶ 7. Eleven of the Local 1011 positions for which elections were held in April 1997 were officer positions governed by Title IV of the LMRDA, 29 U.S.C. §§ 481–483. *Id.* at ¶ 8. A total of twenty-three nominations were made by Local 1011 members for these positions, and at least two individuals were nominated for every officer position. *Id.* at ¶ 9. The attendance rule disqualified none of the officer nominees, thirteen of whom were not incumbent officers. *Id.*

At the time of the April 1997 election, the local union had approximately 2990 members in good standing. *Id.* at ¶ 5. Ninety-five members attended the minimum eight or more of the twenty-four monthly meetings in the period preceding the election and thus qualified to be candidates outright; 103 attended at least seven meetings; 112 attended at least six; 130 attended at least five; 156 attended at least four; 193 attended at least three; 247 attended at least two; and 424 attended at least one. *Id.* at ¶ 10. Once the excuse provision of the attendance requirement is taken into consideration, there were 242 members who were eligible to be candidates, fifty-three of whom did not attend any meetings at all, but were eligible under the excuse provision because they worked on Thursday afternoons when the meetings were regularly held. *Id.* at ¶ 11.

After the election, John Sako and Anderson Bell, both of whom were eligible under the attendance requirement, but were disqualified for other reasons, filed a timely internal protest with Local 1011 regarding the 1997 elections. *Id.* at ¶¶ 15–16. The local union denied the protest, and they appealed the denial to the International Union, which also denied the protest. *Id.* at ¶¶ 16–17. After exhausting their available union remedies, Sako and Bell filed a timely complaint with the Secretary of Labor, alleging several grounds for setting the election aside. *Id.* at ¶ 18. The Secretary did not find probable cause with regard to any of the grounds except the attendance rule, and filed a timely complaint on that basis. *Id.*

Local 1011 posted a notice of the upcoming March 13, 1997, nominations on or around March 1, 1997, and notified mem-

bers of the April 17 elections by a posting on March 24, 1997, and by a mailing on April 1, 1997. These notices did not, however, provide the rules governing eligibility. *Id.* at ¶¶ 19–21.

Back in 1978, the biennial International Convention of the USWA passed an amendment to its Constitution that substantially modified its attendance requirement. *Id.* at ¶ 25. The USWA then notified all its members about the changes in its publication *Steelabor*, which is mailed free of charge to all members. *Id.* In addition, Local 1011 posted notices of the changes in all plant entrances and union bulletin boards in 1978. *Id.* The majority of Local 1011's membership of April 1997 had worked in the plant since before 1978, and the attendance rule has not changed since then. *Id.*

The meeting attendance rule may be found today in the USWA Constitution and a USWA publication entitled "Local Union Elections Manual." *Id.* at ¶ 22. Copies of these documents are available upon request and free of charge both at Local 1011's headquarters in East Chicago, Indiana, and the USWA District Office in Gary, Indiana. *Id.* at ¶ 23. Between the 1994 and 1997 elections, Local 1011 never withheld any requested information regarding the attendance rule nor distributed any special notices to the membership concerning the rule. *Id.* at ¶ 24.

To administer the excuse provision of the attendance requirement, Local 1011 consults employer records to determine whether a nominee who has attended fewer than eight meetings was working during a sufficient number of meetings to qualify for office. *Id.* at ¶ 26. By this means, one of the nominees was found eligible to run for office despite attending only seven meetings; another qualified despite attending only four meetings. *Id.* The excuse provision also allowed members to be excused based on sickness without written documentation, so long as the employee reported off from work sick on the day that a union meeting was held. *Id.* Be-

cause Local 1011 cannot verify other permissible excuses independently, it requires a member to submit written documentation to verify an excuse for jury duty, a death in the family, or military service. *Id.*

## DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *NUCOR Corp. v. Aceros Y Maquilas de Occidente,* 28 F.3d 572, 583 (7th Cir.1994).

## The Hotel Employees and Steelworkers Cases

Section 401(e) of the LMRDA, that is, 29 U.S.C. § 481(e), provides in pertinent part:

In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to ... reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference

or reprisal of any kind by such organization or any member thereof.

In *Wirtz v. Hotel, Motel, and Club Employees Union, Local 6,* 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968) (hereinafter *"Hotel Employees"*), the Supreme Court began to formulate the themes that would recur in cases alleging violations of this statute. In that opinion, the Court addressed a union bylaw which limited candidates for the major elective offices to union members who held or previously had held some elective office. The Court stated that Congress did not intend the authorization of "reasonable qualifications uniformly imposed" to be given a broad reach. 391 U.S. at 499, 88 S.Ct. at 1748. "The check of democratic elections as a preventive measure is seriously impaired by candidacy qualifications which substantially deplete the ranks of those who might run in opposition to incumbents." *Id.* The Court concluded, "Plainly, given the objective of Title IV, a candidacy limitation which renders 93% of union members ineligible for office can hardly be a 'reasonable qualification,'" and remanded the case to the district court with instructions to order a new election under the Secretary of Labor's supervision. *Id.* at 502, 88 S.Ct. at 1749.

*Local 3489, United Steelworkers of America, AFL—CIO v. Usery,* 429 U.S. 305, 97 S.Ct. 611, 50 L.Ed.2d 502 (1977) (hereinafter *"Steelworkers"*) is the controlling Supreme Court case for the controversy before this Court. In *Steelworkers,* the Supreme Court dealt with a provision in the union constitution limiting eligibility to members who had attended at least one-half of the local's regular meetings for three years previous to the election of officers. Relying on *Hotel Employees,* and also *Wirtz v. Glass Bottle Blowers Ass'n.,* 389 U.S. 463, 88 S.Ct. 643, 19 L.Ed.2d 705 (1968), and *Wirtz v. Local 125, Laborers' Intern. Union of North America, AFL—CIO,* 389 U.S. 477, 88 S.Ct. 639, 19 L.Ed.2d 716 (1968), the Court also found this requirement was unreasonable under the LMRDA. "The basic objective of Title IV of the LMRDA is to guarantee 'free and democratic' union elections modeled on 'political elections in this country' where 'the assumption is that voters will exercise common sense and judgment in casting their ballots.'" 429 U.S. at 309, 97 S.Ct. at 614 (quoting *Hotel Employees,* 391 U.S. at 504, 88 S.Ct. at 1748). The Court maintained that the purpose of Title IV transcended the right of an individual union member to run for a particular office, and concerned the rights of all members to participate fully in the operation of their union through democratic processes responsive to the membership. *Id.* (citing *Bottle Blowers,* 389 U.S. at 475, 88 S.Ct. at 650; *Local 125,* 389 U.S. at 483, 88 S.Ct. at 642; and *Hotel Employees,* 391 U.S., at 497, 88 S.Ct. at 1747).

The attendance requirement in *Steelworkers* excluded 96.5% of the union membership from candidacy. On this basis, the Supreme Court, echoing the language of *Hotel Employees,* found that the provision "hardly seem[ed] to be a 'reasonable qualification' consistent with the goal of free and democratic elections." 429 U.S. at 310, 97 S.Ct. at 615 The defendant union, however, tried to distinguish an attendance requirement from the requirement which the Court had rejected in *Hotel Employees,* that is, a requirement of previously holding elective office. Whereas, the union argued, a union member subject to the requirement of *Hotel Employees* could not assure eligibility by the member's own efforts, the union member in *Steelworker* could do so by simply attending eighteen brief meetings over a three-year period, not an onerous burden. *Id.* The Court rejected this distinction, noting that the union member in *Steelworker* would have to start attending meetings at least eighteen months in advance of an election in order to be eligible to run. 429 U.S. at 311, 97 S.Ct. at 615. Such a requirement, the Court reasoned, would probably discourage broad participation since it is unlikely that the issues which might prompt

potential candidates to run would be evident so far in advance of the elections. *Id.*

*Steelworkers* made it clear that an attendance requirement which excluded 96.5% of union membership from candidacy and required members to decide to qualify themselves eighteen months in advance of an election violated section 401(e) of the LMRDA. The Court, however, declined to adopt a per se "effects" standard or analysis, though the dissent claimed the majority came close to doing so. 429 U.S. at 315, 97 S.Ct. at 617. Rather, the Court endorsed a flexible rule under which courts would consider several factors in deciding whether an attendance requirement disqualifying a high percentage of the membership from candidacy was reasonable, including union interests that would justify or balance such a result. 429 U.S. at 313, 97 S.Ct. at 616–17. This Court has already noted above that the Supreme Court considered the length of time needed to qualify under the union's attendance requirement. The Supreme Court in *Steelworkers* also considered, but was not persuaded by, the union's justifications. To the argument that the attendance requirement was reasonable because it served to encourage better attendance at union meetings, the Court noted the evident failure of the requirement to achieve that objective. 429 U.S. at 312, 97 S.Ct. at 615. To the argument that the requirement assured that only knowledgeable candidates who had attended meetings would be elected, the Court maintained that "the provisions of the LMRDA express a congressional determination that the best means to this end is to leave the choice of leaders to the membership in open democratic elections, unfettered by arbitrary exclusions." *Id.*

*Deference Owed To 29 C.F.R. § 452.38, n. 25*

The lack of a per se standard has, to some extent, relegated unions to guessing at what attendance requirements the courts would permit. The current USWA attendance rule under consideration in this case requires candidates to attend one-third of the monthly union meetings during the 24–month period previous to a union election. This would oblige potential candidates to start attending meetings at least eight months in advance of the elections. In the April 1997 elections, this rule excluded 96.83% of the membership before its excuse provision was taken into account. After applying the excuse provision, 92% of the membership would still have been barred from running.

Local 1011 notes that back in 1978, just after the *Steelworkers* decision, the Department of Labor reviewed the current USWA attendance rule under its interpretative regulations. Def.'s Mem. at 21. The Department of Labor provided an official statement to the USWA indicating that its rule "would be regarded as reasonable within the guidelines even if its application resulted in the disqualification of a high proportion of the membership." *Id.* (quoting Ex. B to Marshall Dec. at 1). Local 1011 notes that 29 C.F.R. § 452.36 sets forth a variety of factors to be considered in assessing the reasonableness of a qualification for union office, such as "the relationship of the qualification to the legitimate needs and interests of the union," the "relationship of the qualification to the demands of union office," etc. Def.'s Mem. at 21–22. 29 C.F.R. § 452.38(a) sets forth factors which deal specifically with meeting attendance requirements, and provides as follows:

> [The reasonableness of an attendance requirement] must be gauged in the light of all the circumstances of the particular case, including not only the frequency of meetings, the number of meetings which must be attended and the period of time over which the requirement extends, but also such factors as the nature, availability and extent of excuse provisions, whether all or most members have the opportunity to attend meetings, and the impact of the rule, i.e., the number or percentage of members who would be rendered ineligible by its application.

Local 1011 quotes these regulations to buttress its position that the long-standing policy of the Department of Labor, based on *Steelworkers,* has been to apply a multifactor test in determining whether an attendance requirement is reasonable, and not to decide the matter exclusively on the basis of what proportion of the membership such a requirement would exclude.

Initially, the Union understood the Secretary was alleging Local 1011's attendance rule to be in violation of the LMRDA on the basis of its high rate of exclusion in combination with inadequate notice of the requirement among union members. Def.'s Mem. at 21. However, the Secretary made it clear in her reply that "[her] case is predicated entirely on the fact that, even with a liberal excuse provision, 92 percent of the members of Local 1011 were barred from running for office." Pl.'s Reply at 3. The Secretary argued that rule-making and case law subsequent to the correspondence and rules cited by Local 1011 lend support to her position. *Id.* The cornerstone of the Secretary's case is *Doyle v. Brock,* 821 F.2d 778 (D.C.Cir. 1987), where the D.C. Circuit found arbitrary and capricious the Secretary of Labor's decision not to challenge a union bylaw which required a candidate for office to attend at least half of the union meetings in the twelve months preceding the election. In reaching that conclusion, the D.C. Circuit held that the impact of an attendance requirement which disqualified 97% of the union's membership from candidacy was by itself sufficient to make the requirement unreasonable. "There is no basis, in *Steelworkers* or in any other case, for the notion that an attendance requirement that has a large antidemocratic effect

can be reasonable on its face, and that some additional factor is necessary to find the requirement violative of the LMRDA." 821 F.2d at 784.

In reaction to this decision, the Department of Labor embarked upon its formal rule-making procedure which resulted in the adoption of the following language in a footnote to Rule 452.38 on November 14, 1995, well before the Local 1011 election under discussion:

> If a meeting attendance requirement disqualifies a large portion of members from candidacy, that large antidemocratic effect alone may be sufficient to render the requirement unreasonable. In *Doyle v. Brock,* 821 F.2d 778 (D.C.Cir. 1987), the court held that the impact of a meeting attendance requirement which disqualified 97% of the union's membership from candidacy was by itself sufficient to make the requirement unreasonable notwithstanding any of the other factors set forth in 29 C.F.R. § 452.38(a).

29 C.F.R. § 452.38 n. 25. The Secretary argues that this language provides, in effect, "an inverse relationship between the percentage of members disqualified and the reasonableness of a rule ... There can be no question that the rationale of the letter issued to the Steelworkers has been superseded by this formal rulemaking procedure." Pl.'s Reply at 9. The Seventh Circuit has apparently not decided whether it agrees with the Department's footnote indicating, in light of *Doyle,* that a union attendance requirement may be found unreasonable under the LMRDA solely on the basis of the extent to which it excludes union members.[1]

---

1. In *Donovan v. Illinois Ed. Ass'n,* 667 F.2d 638 (7th Cir.1982), the Seventh Circuit addressed a union bylaw which guaranteed 8% of the seats in the union's Representative Assembly to minority groups. In considering the antidemocratic effect of the bylaw, Judge Posner remarked, "We have found no recent decision upholding a candidacy qualification that excluded a majority of the union's membership, however reasonable the qualification

may have seemed." *Id.* at 641. However, the panel did not find the bylaw unreasonable on this basis alone, but also considered the likelihood that the bylaw would perpetuate incumbency, the vagueness of the union's justification for the rule, the lack of information about the actual racial and ethnic composition of the union, and the lack of correlation between the minorities that might be assigned these seats and the racial and ethnic make-up

In response to the Secretary's explication of case law and regulatory authorities, Local 1011 elaborates upon the deference this Court ought to extend to the Secretary's current policy. The Union cites *Atchison Topeka and Santa Fe Ry. Co. v. Pena*, 44 F.3d 437, 442 (7th Cir.1994) (en banc) *aff'd on other issues* 516 U.S. 152, 116 S.Ct. 595, 133 L.Ed.2d 535 (1996), where the Seventh Circuit reviewed a regulation which the Federal Railroad Administration (the "FRA") had published in acquiescence to the Ninth Circuit's rejection of the FRA's previous regulation as an unreasonable interpretation of the governing statute. Def.'s Reply at 5–6. The Seventh Circuit distinguished between administrative agency rules adopted pursuant to a statute that contains a delegation of rule-making authority from Congress to the agency, and, so-called "interpretive rules" that an agency adopts pursuant to its inherent authority to make known its interpretation of the statutes the agency is charged with administering. *Atchison Topeka*, 44 F.3d at 441–42. Only the former, the court held, are entitled to the high degree of deference accorded in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). 44 F.3d at 441. The Seventh Circuit went on to hold that, although an interpretive rule is normally entitled to a moderate degree of deference from the courts, that deference (1) diminishes when the rule is the product of a change from a prior longstanding interpretation; and (2) disappears altogether when the agency has adopted its new interpretation solely because a court has disapproved of the agency's prior interpretation. 44 F.3d at 442–43. The court further stated:

> Any deference that we might confer upon an agency interpretation of a statute must be to the agency's diligent study of the statute and the underlying

of the students taught in the Illinois public schools.

In *Reich v. Local 1, American Postal Workers' Union, AFL—CIO*, 1994 WL 110610

activity it seeks to regulate. Here, however, the FRA is essentially asking that we defer to the Ninth Circuit's interpretation of the Act. . . . And while we carefully consider the opinions of our sister circuits, we certainly do not defer to them. . . . Our duty is to independently decide our own cases, which sometimes results in disagreements with decisions of other circuits.

*Id.* at 443 (citations omitted). Judge Easterbrook, in a concurring opinion joined by Chief Judge Posner and Judge Manion, fully agreed with the majority and added that since courts do not defer to agencies when agencies decide not to acquiesce to a judicial decision, fairness to the private parties who are affected by agency actions dictates that the courts likewise should not defer to agency decisions in favor of acquiescence. *Id.* at 444.

In explaining why she modified the policy of the Department by adding the language quoted above, the Secretary said the following in the Federal Record:

> Several labor organizations stated in their comments that they disagreed with *Doyle* and recommended that *Doyle* not be followed in other circuits. However, this recommendation is not feasible. Since *Doyle* was decided in the District of Columbia Circuit, where the Secretary is located, and since . . . any member may bring litigation against the Secretary for judicial review of his decision not to take enforcement action, a decision by the Secretary not to follow *Doyle* in another circuit would be susceptible to successful legal challenge in the D.C. Circuit.

60 F.R. 26390 (May 17, 1995); Pl.'s Reply, Ex. C. As Local 1011 points out, in explaining her acquiescence to the appellate court, the Secretary did not indicate that she agreed with *Doyle's* reasoning. Not-

(N.D.Ill. March 31, 1994), a District court within the Seventh Circuit referred to the holding in *Doyle* but did not come to a conclusion about its merits.

ing, instead, that the D.C. Circuit would have jurisdiction and venue for actions against the Secretary, the Secretary indicated it would not be "feasible" for her to defend decisions not in conformity with *Doyle*, since all such cases could be brought in the D.C. Circuit and the Secretary would be bound to lose every time given that court's decision in *Doyle*. The lack of substance inhering in the Secretary's explanation suggests that agency expertise had little to do with this change in policy. Consequently, the new rule is not entitled to the deference a court normally accords to policy predicated on agency expertise. The authority for this rule, then, boils down to the D.C. Circuit's opinion in *Doyle*, which, for a district court sitting in the Seventh Circuit, is persuasive but not controlling authority.

*There Is No Per Se Test*

Among opinions which have addressed the issue of union attendance requirements, *Doyle* is unique in holding that a union attendance requirement may be found unreasonable under the LMRDA on account of its exclusivity alone. Local 1011 is correct in observing that all the other courts which have struck down attendance requirements have invariably cited some other factor or factors in reaching this result. Def.'s Reply at 13. One factor the courts have almost always discussed is the length of time previous to the elections that would be necessary to attend the meetings required for eligibility. For example, in *Marshall v. Local 1402, Intern. Longshoremen's Ass'n of Tampa, Fla. and Vicinity AFL—CIO*, 617 F.2d 96 (5th Cir. 1980), *cert. denied*, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980), which the Secretary cites because it emphasized the presumed unreasonableness of a requirement that excluded 93.7% of the membership, the court nevertheless discussed the effect

of a ten-month period needed to qualify, stating that the concern for eliminating potential candidates whose interest in running may be aroused too late to comply with qualifying procedures "is operative in this case." *Id.* at 99. In *Herman v. Local Lodge 197, Intern. Broth. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL—CIO*, 976 F.Supp. 129 (N.D.N.Y.1997), another case cited by the Secretary, the attendance rule excluded 87% of the membership, but in finding the requirement unreasonable, the court also considered the effect of the fifteen-month advance period imposed by the requirement. 976 F.Supp. at 134.

In emphasizing the percentage of membership excluded as the basis of her case, the Secretary states, "We have been unable to locate a single case where the court has upheld a rule, regardless of the asserted purpose and justification, where the number of members barred by the rule approaches, much less exceeds, 90 percent." Reply at 10. An unpublished decision from the District of Massachusetts, *Herman v. Springfield Mass. Area Local 497 APWU*, No. 97–30202, *slip op.* (D.Mass. February 10, 1999), which had been entered one week after the Secretary's final submission, changed this result.[2] In *Local 497*, the district court disagreed with the Secretary's position that the exclusivity of an attendance rule can per se render the attendance rule unreasonable. Relying on the Supreme Court's unwillingness to establish a per se "effects analysis" which could determine a bylaw to be unreasonable merely on the basis of percentage of members excluded, the district court held that an attendance rule's exclusion of 96% of the union membership was not by itself sufficient to establish the unreasonableness of that rule. Order attached to Def.'s Letter, at 11–12. The court, then, looked to other factors. One

---

**2.** Both parties wrote letters to the Court concerning this opinion. In an Order entered on March 31, 1999, the Court advised the parties of its preference that in such situations they file a leave to supplement rather than contact

the Court by letter. The Court made the letters part of the official record and considered the arguments therein, the parties not objecting.

was the time needed to establish eligibility. *Id.* at 12–14. The rule in *Local 497* required attendance at three monthly meetings over the previous year, so that a member only needed three months to qualify. *Id.* at 13. The court noted that 29 C.F.R. § 452(a) states, "It may be reasonable for a labor organization to establish a requirement of attendance at a specified number of its regular meetings during the period immediately preceding an election...." *Id.* The district court also considered the number of meetings required and the excuse provision en route to concluding that the *Local 497* attendance rule was reasonable. *Id.* at 14–17. As a result, the court granted the union summary judgment.

It is true that *Local 497* does not address *Doyle*, but it is by no means certain that this would have made any difference. Noteworthy is the district court's consideration of the advance time needed to qualify, a factor which has been noted above in other opinions addressing union attendance requirements. The ultimate authority for considering this factor is the Supreme Court's *Steelworkers* opinion, where the Court found that a qualifying period of eighteen months was too long. 429 U.S. at 310–311, 97 S.Ct. at 615.

Local 1011 rightly recognizes the importance of the qualifying period in the determination of an attendance requirement's reasonableness. Def.'s Mem. at 34–36. The Supreme Court addressed this factor in response to the union's argument that an attendance requirement should be distinguished from the requirement of holding minor elective office which had been rejected in *Hotel Employees*. 429 U.S. at 310, 97 S.Ct. at 615. The union conceded

that the *Hotel Employees* requirement might not have been within the control of a given union member, but argued that an attendance requirement was within the power of any member since all he or she need do is attend the requisite number of meetings. *Id.* The Supreme Court, however, rejected this argument, reasoning that potential candidates, motivated by the issues which usually emerge just before an election, would generally be unable to qualify when confronted with an attendance rule that required them to have begun to qualify long ago. 429 U.S. at 311, 97 S.Ct. at 615. An attendance requirement, then, which imposes such a long advance period, resembles the requirement in *Hotel Employees*, in that it effectively renders potential candidates powerless to qualify at the very time they are most likely to make decisions about running for union office.[3]

■ This Court respectfully disagrees with the holding in *Doyle*, and finds that the proper interpretation of the Supreme Court's opinion in *Steelworkers* is that the unreasonableness of a attendance requirement does not depend per se on the percentage of the membership excluded, though this may be an important factor. In determining the reasonableness of an attendance requirement, there are other factors that a court should consider, particularly the amount of time a union member needs to qualify in advance of the election. The Court reaches this conclusion because the Supreme Court in *Steelworkers* made it clear it was not setting forth a per se rule, and because in finding the union rule unreasonable, the Supreme Court examined the factor of advance time needed to qualify as well as percentage of member-

---

3. In some cases, unions have presented attendance requirements with fewer meetings than were required in *Steelworkers*, but with as long a qualifying period. Consider *Usery v. Local Division 1205, Amalgamated Transit Union*, 545 F.2d 1300 (1st Cir.1976), where the union required prospective candidates for office to attend six regular meetings each year during the twenty-four months prior to an election, which had the effect of requiring attendance for a period beginning eighteen months prior to an election. Though the requirement seems to reduce the burden by lessening the number of meetings, it maintains the amount of qualifying time, which is far more indicative of the restrictiveness of the requirement.

ship excluded. The Court also notes the following passage from *Steelworkers:*

> The reasons for leaderships becoming entrenched are difficult to isolate. The elections of the same officers year after year may be a signal that antidemocratic election rules have prevented an effective challenge to the regime, or might well signal only that the members are satisfied with their stewardship; if elections are uncontested, opposition factions may have been denied access to the ballot, or competing interests may have compromised differences before the election to maintain a front of unity. Conversely, turnover in offices may result from an open political process, or from a competition limited to candidates who offer no real opposition to an entrenched establishment. But Congress did not saddle the courts with the duty to search out and remove improperly entrenched union leaderships. Rather, Congress chose to guarantee union democracy by regulating not the results of a union's electoral procedure, but the procedure itself. Congress decided that if the elections are "free and democratic," the members themselves are able to correct abuse of power by entrenched leadership. Procedures that unduly restrict free choice among candidates are forbidden without regard to their success or failure in maintaining corrupt leadership.

429 U.S. at 311, 97 S.Ct. at 615–16. This Court acknowledges that here the Supreme Court was mostly concerned with "results" in regard to the union officers actually elected rather than in regard to the proportion of union members excluded as candidates. In this passage, however, the Supreme Court does entertain the possibility that entrenched leadership may simply be the choice of union membership. The same may be said for low participation rates in union elections. Local 1011's point is well-taken, that it is likely the vast majority of union members choose not to run for union office for the same reason the vast majority of Americans choose not to run for political office, not because of limitations imposed by a requirement, but as a matter of choice. Def.'s Mem. at 32. The record indicates that only 424 union members out of 2990 attended even one of the meetings, so that even if Local 1011 had an attendance requirement of but one meeting, 86% of the membership would have been excluded. It is because of the possibility that 90% of union membership might never take an interest in union office, regardless of candidacy requirements, that courts should not focus uniquely upon the failure of this 90% to meet candidacy requirements, but should identify some other factor or factors which unduly burden the decision to run in the elections. As the Supreme Court indicates, the role of the courts is to assure that the union's electoral procedures are free and democratic, so that union members have an unfettered opportunity to participate as candidates, which they can accept or reject as they wish.

### The Eight–Months Factor

In the instant case, the attendance rule not only excluded 92% of the membership, but also imposed a period of at least eight months in which to qualify. Is this too long? Local 1011 states, *"Doyle* is the *only* case in which a meeting attendance rule with a qualifying period of eight months or less was found unreasonable because of its percentage 'effect.'" Def.'s Reply at 13. For her part, the Secretary notes that courts have made it clear "that periods of ten or twelve months are prohibited," and adds, "we are unaware of any court which has found shorter periods of time permissible where a significant portion of the membership is barred from office." Pl.'s Reply at 12. In referring to courts which have found "periods of ten" months unreasonable, the Secretary may have had in mind *Marshall v. Local 1402,* cited above, which found a ten-month qualifying period accompanying a 93.7% exclusion rate, unreasonable. But there are cases which have found six months unrea-

sonable. *Marshall v. Millwrights Local Union No.1914, United Brotherhood of Carpenters and Joiners of America,* 1981 WL 27201 (D.Ariz.1981), addressed a union attendance rule which required members to attend at least half of the monthly membership meetings during the twelve months preceding nomination in order to be eligible for local union office, with no excuses allowed for any reason. *Id.* at *3. The rule rendered approximately 80% of those union members who were not disqualified by other bylaws ineligible, and the qualifying period would apparently have been six months. *Id.* at *6. The court found, "The imposition by Local 1914 of a rule requiring members to attend at least fifty percent (50%) of the membership meetings during the twelve months preceding nominations to be eligible to be candidates for office, is unreasonable and a violation of § 401(e) of the Act (29 U.S.C. § 481(e))." *Id.* There is also the *Doyle* decision, where the D.C. Circuit considered an attendance requirement of 50% of monthly union meetings over twelve months resulting in the exclusion of 97% of the membership to be unreasonable. Of course, the D.C. Circuit reached this conclusion on the basis of the exclusion rate alone. Nevertheless the *Doyle* case is noteworthy as a rejection of an attendance requirement that had a six-month qualification period. In contrast to these cases, *Local 497,* found three months to be reasonable despite the exclusion of 96% of the union membership.

 The case law, then, appears to indicate that where a union attendance requirement excludes a high percentage of the membership (close to or above 90%), a qualification period requiring three months or less may be reasonable, while one requiring six months or more will not be reasonable. This indication would place the eight-month qualifying period of the instant case outside the realm of reasonableness, given the exclusion of 92% of the union membership that the attendance requirement entailed.

Local 1011 points to the Declaration of former Department of Labor Secretary Marshall, ¶ 18, which states, "It is reasonable to expect that most members' views about the incumbents' performance will have ripened and that the campaign issues will have taken shape by [the eight months before a triennial election]." However, aside from simply making this statement, the former Secretary of Labor does not provide much evidentiary support or explanation as to why eight months is reasonable. It is surely the case that issues and interest in a union election are likely to intensify, and union members likely to give greater consideration to running for office, as the time of election approaches. If that is true, then the shorter the qualifying period imposed by an attendance requirement, the more likely that requirement is reasonable, regardless of its effect, as long as there are no other factors that unreasonably exclude union members. The Court believes that eight months to qualify in advance of an election to be a long period to impose upon union members especially when it results in the exclusion of a high percentage of the membership. An attendance requirement that would permit members to decide about running well within six months of the election would appear to give them sufficient opportunity to make this decision on the basis of the issues that would be relevant to that election.

*Other Factors*

Local 1011 attempts to bring some of the other factors listed in 29 C.F.R. §§ 452.36 and 452.38 to bear on the determination of whether its attendance rule is reasonable. Section 452.36(b)(4) provides that a qualification ought to be assessed by comparing it with the requirements for holding office generally prescribed by other labor organizations. The local union points out that before the Department of Labor approved the USWA's revised meeting attendance rule, it had conducted a survey of labor organizations and had found the revised rule congruent with the

meeting attendance rules found in other labor organizations. Marshall Dec. at ¶ 22; Def.'s Mem. at 26–27. However, what may have been typical, reasonable, and acceptable at that time might not be today. The case law indicates that courts have become more severe in their standard of reasonableness over the years. Though Local 1011's current attendance rule may have been typical of rules other labor organizations had in the past, case law indicates courts do not consider it reasonable today.

29 C.F.R. § 452.38(a) provides that the reasonableness of a qualification must be gauged in the light of all the circumstances of the particular case, "including the number of meetings which must be attended and the period of time over which the requirement extends, [and] whether all or most members have the opportunity to attend meetings." Local 1011 argues that the burden of attending eight union meetings over two years is not great. Def.'s Mem. at 28. However, the Supreme Court pointedly stated in *Steelworkers*, "We must judge the eligibility rule not by the burden it imposes on the individual candidate, but by its effect on free and democratic processes of union government." 429 U.S. at 310–11 n. 6, 97 S.Ct. at 615 n. 6. This Court agrees with Local 1011 that its attendance rule imposes no great burden on its members in terms of the number, hours, and accessibility of the union meetings. But the requirement does impose a burden on the democratic process. This Court has maintained above that not only the exclusivity of the attendance rule, but also the length of time needed to qualify under the rule are the most important factors in respect to assessing the rule's effect on the union's voting process. With respect to the democratic process, these factors outweigh the burden in terms of hours and accessibility that the requirement may place on union members.

29 C.F.R. § 452.38 also indicates that reasonableness depends on "the nature, availability and extent of the excuse provi-sions." Local 1011 argues at length for the reasonableness of the excuse provision of its rule. Def.'s Mem. at 27–29. Again, the union does not need to persuade the Court as to the reasonableness of the excuse provision. However, despite the liberality of an excuse provision that allowed fifty-three union members to qualify who had not attended a single meeting, the fact remains that the excuse provision did not reduce the percentage of union members excluded by the rule below 92%. Furthermore, the excuse provision did nothing to reduce the amount of time generally necessary for a union member to qualify to run as a candidate: eight months. The excuse provision may have had more relevance in the case of an attendance requirement that did not exclude such a high proportion of union members or did not impose so long a period of time for qualification. In this case, however, because of the extreme effects of the attendance requirement, the reasonableness of the excuse provision does not diminish the unreasonableness of that requirement.

*The Union's Interests*

As noted above, the Supreme Court in *Steelworkers* considered whether the union had legitimate interests that would justify the antidemocratic effect of its attendance rule. 429 U.S. at 310, 97 S.Ct. at 615. Even *Doyle*, relying on *Steelworkers*, states, "[T]he only way to justify a requirement that has a large antidemocratic effect is to show that the requirement serves valid union interests." 821 F.2d at 785. Local 1011, then, raises the interests which, the union insists, justify the effects of the attendance rule. Quoting the Declaration of former Secretary of Labor Marshall, Local 1011 claims the rule "help[s] to insure broad-based attendance at local union meetings, i.e., attendance by those who oppose as well as those who support the incumbent officers." Marshall Dec. at ¶ 15; Defendant's Mem. at 22. However, with only 3% of the membership qualifying outright for the elections through their attendance, it is clear that the rule has failed

to achieve this objective. The Supreme Court made much the same point when addressing a similar justification in *Steelworkers*, "[T]he rule has plainly not served these goals. It has obviously done little to encourage attendance at meetings, which continue to attract only a handful of members." 429 U.S. at 312, 97 S.Ct. at 616.

Local 1011 also argues that the attendance rule "ensure[s] that persons who hold positions of responsibility and trust in a local union have a demonstrated interest in, and commitment to, the local union in question." Marshall Dec. at ¶ 12; Def.'s Mem. a 25. And a third union interest provided by the local union is that of "ensur[ing] that candidates have participated in the affairs of the union and are therefore more likely to be familiar with its problems when they become officers." *Id.* The Secretary's response to the arguments predicated on these interests is that the union membership itself should decide whether candidates have sufficiently demonstrated interest and commitment to the local union or have sufficiently participated in its affairs and are sufficiently familiar with its problems to hold office. Pl.'s Reply at 13. The Supreme Court had the same reaction to these justifications in *Steelworkers:* "As for assuring the election of knowledgeable and dedicated leaders, the election provisions of the LMRDA express a congressional determination that the best means to this end is to leave the choice of leaders to the membership in open democratic elections, unfettered by arbitrary exclusions." 429 U.S. at 312, 97 S.Ct. at 616.

*The Requirement "May Have Affected" the Elections*

Under section 402(c) of the LMRDA (29 U.S.C. § 482(c)), a court may order a new election only if it finds the violation "may have affected" the outcome of the previous election. The Secretary argues that in *Hotel Employees,* the Supreme Court interpreted the legislative history of the Act to indicate that Congress intended a proved violation to have the effect of establishing a *prima facie* case that can be met only "by evidence which supports a finding that the violation did not affect the result." Pl.'s Mem. at 16 (quoting *Hotel Employees,* 391 U.S. at 507, 88 S.Ct. at 1752). Furthermore, the Supreme Court noted that the exclusion of a large percentage of the membership made it "impossible to know that the election would not have attracted many more candidates but for the bylaw." 391 U.S. at 508, 88 S.Ct. at 1752–53.

■ Local 1011 argues that the Supreme Court in *Steelworkers* did not seek to free from the burden of restrictive requirements all union members regardless of whether they wanted to run for office or not. Rather, the Court sought to protect only those union members who were seriously interested in running for office but were deterred by those requirements. Pl.'s Mem. at 31–34. The union believes it is fatal to the Secretary's case that she does not convincingly identify any union member who would have run had it not been for the rule. Def.'s Mem. at 6–9, 31–34. The Secretary responds with more case law indicating that this does not matter. Pl.'s Reply at 14–16. In *Donovan v. Local 223, Motor Expressmen's Union of the National Federation of Independent Unions,* 1982 WL 1167 (W.D.Okla.1982), for example, no union member who was nominated as a candidate was expressly denied the right to be a candidate for office because of the challenged qualifications rule. "However, the Court [found] that the number of potential candidates was so far reduced by the qualifications imposed that potential winning candidates may have decided not to run for union office by reason of the challenged candidacy requirements." *Id.* at * 5. Likewise the Supreme Court in *Wirtz,* 389 U.S. at 483, 88 S.Ct. at 642, stated:

The Act was not designed merely to protect the right of a union member to run for a particular office in a particular election. Title IV's special function in furthering the general goals of the

---

LMRDA is to insure free and democratic elections, the regulations of the union electoral process enacted in the Title have been regarded as necessary protections of the public interest as well as the right and interests of union members.

In the instant case, the percentage of union members excluded was very large, 92%. It is impossible to know that none of them would have run for union offices and won were it not for the discouraging effects of the meeting attendance rule which potential candidates had to start meeting at least eight months in advance of the elections. The Court finds that the violation may have affected the outcome of the union's April 1997 election of officers.

*The Remedy*

The Court may declare an election void and direct a new election under the direction of the Secretary if a § 401(e) violation has occurred that may have affected the outcome of the election.[4] Such relief is proper on a motion for summary judgment. *Usery v. Intern. Org. of Masters, Mates & Pilots*, 538 F.2d 946, 949 n. 5 (2d Cir.1976). Having found a violation of section 401(e) of the LMRDA that may have affected the outcome of the election, this Court declares the previous election void and orders a new election under the direction of the Secretary.

*CONCLUSION*

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is **GRANTED,** the Defendant's Motion for Summary Judgment is **DENIED,** the Court **DECLARES VOID** the Local 1011 election, and the Court **ORDERS** a new election under the direction of the Secretary.

Furthermore, it is ORDERED that the parties shall have ten days from the date of this order to report whether further judicial proceedings are necessary in this case. If no party reports that further judicial proceedings are necessary, the Court will enter final judgment consistent with the present ruling.

---

4. 29 U.S.C. § 482(c) provides in pertinent part, "If, upon a preponderance of the evidence after a trial upon the merits, the court finds ... that the violation of section 481 of this title may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization."